## Morris Greenberg, Blanche Isaacs, and Yetta Isaacs v. Harold E. Giddings, Frederick D. Giddings

[ 246 A.2d 832 ]

June Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 1, 1968

*Loveland & Hackel* for the Plaintiffs.

*Stephen H. Gilman, Esq.,* for the Defendants.

**Smith, J.** The plaintiffs are the owners of a dwelling house in Manchester Depot, Vermont, which was damaged by fire on December 21, 1963. The defendant, Frederick D. Giddings, is engaged in the plumbing business in Manchester, and defendant Harold E. Giddings, his brother, is a plumber employed by Frederick. Plaintiffs brought a civil action against the defendants, sounding in tort, in the Bennington County Court, complaining that the fire, and the resultant damage to their dwelling house, was caused by the negligence of Harold E. Giddings, acting in the scope of his employment by Frederick D. Giddings. Jury trial was had in the Bennington County Court on July 11, 1967, and a verdict was rendered for the defendants. Plaintiffs have brought their appeal here from the resultant judgment, and from the lower court's denial of their motion for a verdict to be directed for plaintiffs at the close of the evidence, and from the denial of their motion to set aside the verdict and enter judgment in accordance with the plaintiffs' motion for a directed verdict.

The factual situation which resulted in the fire, as well as the consequent damages, are virtually undisputed. On December 21, 1963, Harold Giddings, as an employee of his brother, a general plumbing contractor, was engaged in thawing frozen pipes located in a pit under the bathroom floor at the house in Manchester owned by the plaintiffs. The pit in which Harold was working was four by four and a half feet square by four feet high, with walls of loose rock, and was so criss-crossed with pipes that Harold had to straddle some pipes and do his work in a bent or kneeling position.

It was a bitterly cold morning and the instrument employed by Harold to thaw the frozen pipes, as well as to solder broken lines, was a Bernzomatic torch and gas cylinder. After Harold had started his task of thawing the frozen pipes with the propane gas torch he noted that someone unknown had suspended an electric heater in a corner of the pit in which he was working, and that this heater was in full operation as shown by its glowing coils.

During a half hour's work in the pit, Harold had inserted and removed the torch from the cylinder of gas on one occasion. Upon his performing the same act a second time he heard gas escaping from the cylinder. He immediately attempted to pass the leaking cylinder out of the pit to a fellow workman on the floor above, but the gas ignited, causing the fire and damage. All parties concede that the escaping gas was ignited by the heat emitted from the electric heating

unit, and that if the plaintiffs were entitled to any damages from the defendant it was in the amount of $600.00.

 The plaintiff's claims of error here are based upon the refusal by the trial court to grant their motion to set aside the verdict. In their motion to set aside the verdict the plaintiffs contended that there was no evidence to support the verdict, and also, that the verdict was against the weight of the evidence. The contention that the verdict was not supported by competent and relevant evidence raises a question of law, while that ground of the motion that the verdict was against the weight of the evidence was addressed to the discretion of the trial court. *Merrill* v. *Reed,* 123 Vt. 248, 252, 185 A.2d 737. The first aspect of the motion was tantamount to a motion for a directed verdict and is to be passed upon in the same way. *Sawyer* v. *Ewen,* 122 Vt. 320, 322, 173 A.2d 549.

 The defense of contributory negligence was not raised, nor was there any issue on the proximate cause of the fire that damaged the plaintiffs' property, it being conceded that the cause of the fire was the ignition of the escaping propane gas from the cylinder by the electric heating unit. The sole issue for determination in the case was the alleged negligence of the defendants, upon which issue the plaintiffs bore the burden of proof. The charge of the court, in substance, to which no exception was taken, was that propane gas was flammable and highly dangerous substance, and that the law requires a person using it to employ the highest degree of care and caution.

The court, in its instruction to the jury on the standard of care required of Harold Giddings, used the following language:

"Ultimately the question you have to decide is whether or not Mr. Harold Giddings, the employee here, in light of his knowledge of the characteristics of propane gas, its dangerous characteristics, in light of his experience with the use of propane gas, in light of his knowledge of occasional or at least from time to time escapes of gas from containers with which it was used, in light of this knowledge and in light of the knowledge which he had or shortly acquired that an electric heater was operating in the confined space in which he was using the substance, acted as a reasonably prudent plumber would under the same or similar circumstances."

 Whether the charge, as given, was correct, although we consider it to have been so, is immaterial. An instruction to the jury,

without any exceptions being taken, becomes the law of the case. *Merrill* v. *Reed, supra.*

■ Having in mind the instructions given to the jury for the determination of the question of defendants' negligence, we now consider the evidence in the light most favorable to the defendants, excluding any modifying evidence, and resolving all conflict against the plaintiffs. *Baldwin* v. *State of Vermont (Vermont Railways),* 126 Vt. 70, 72, 223 A.2d 556.

Harold Giddings had been a plumber for some nineteen years, working for his brother. During this period he had frequently used a Bernzomatic torch. The gas cylinders used with the torch were of a refillable variety, and were kept in a bin in the plumbing shop. When needed on a job, they were carried in a special compartment in the pickup truck carrying plumbing equipment.

Harold knew that it was possible that gas could leak from the cylinder, but he had never experienced any such leakage in his plumbing experience, nor had he ever had any other trouble with the use of a torch and cylinder. He also was aware that dirt allowed to accumulate in a value could permit the value to remain open, but he always checked for the presence of such a condition, and had never encountered it. Harold also testified that he was aware that propane gas was inflammable and could be ignited by heat, but he had no knowledge of what percentages of gas and air would be required to compose a combustible mixture.

He testified that it was common plumbing practice to use the Bernzomatic torch with attached gas cylinder in the near presence of such open flames as blow torches, gun-type oil burners and operating stoves and furnaces.

The evidence of the defendants was that Harold detected the sound of escaping gas from the cylinder at a time when he removed the Bernzomatic tip from it, after a work period of about a half hour. He immediately attempted to hand the leaking cylinder to a fellow workman to be thrown outside, but the fire ignited before this action was completed.

The argument of the plaintiffs is, essentially, that the defendants were guilty of negligence per se. The argument is that defendants, by introducing propane gas into the small area of the pit in which the frozen pipes were located without first unplugging the electric heater

hung there, in view of the defendants' knowledge of the dangerous propensities of the gas, and the dangers of its leakage, was inconsistent with the use of the highest degree of care and caution which it was defendants' duty to employ.

Even if there is some evidence tending to show requisite care on the part of the defendants, assert the plaintiffs, the plaintiffs' evidence so preponderates that it was an abuse of discretion on the part of the trial judge to refuse to set aside the verdict in accordance with their motion.

It is immediately apparent that the plaintiffs' claim that defendant Harold Giddings was guilty of negligence in going into the pit and using the propane gas torch in the vicinity of the electric heater is based upon the testimony of Dr. Crook, an expert witness employed by the plaintiffs. This expert made a series of calculations to estimate the cubic feet of air in the pit, with deductions made for the air displacement made by the pipes and the plumber. He then took into consideration the percentage of propane gas and air which will produce a combustible mixture. Based on these calculations he testified that in his opinion the conduct of the defendants was not performed to a safe standard of care.

■■ However, the weight of this testimony and the credibility of the witness was for the jury to determine and not for review by this Court. *Davis* v. *Kneeland Lumber Co.*, 124 Vt. 70, 72-73, 196 A.2d 572. Under the charge of the court the jury was to measure the conduct of the defendant Harold Giddings, by determining whether he "acted as a reasonably prudent plumber would under the same or similar circumstances." The plaintiff, carrying the burden of proof, offered no evidence that a prudent plumber would have the scientific knowledge to ascertain the existence of the dangerous circumstances which the training of the expert allowed him to deduce from his calculations. In fact, the testimony of the defendant Harold was that he lacked such knowledge. While the highest degree of care was, under the instructions of the court, required to be used by the defendant under the circumstances, it was such care as would have been used by a prudent plumber, and not that which might have been employed by a professor of chemistry or an expert on the use of flammable gases.

■ The defendant Frederick C. Giddings, the employer of Harold, was not present at the scene of the fire and could only be

held liable if it was ˌ ˄ negligence of Harold Giddings that caused the fire under the doctrine ʊf *respondeat superior*. Although Frederick testified that in his experience a leaking gas cylinder was not uncommon in a plumbing operation, his employee, Harold, stated that he has never encountered such a leak in his plumbing experience. In measuring Harold's conduct in the circumstances of this case, his employer's knowledge of the danger in the use of the gas cylinder and torch would not be imputed to his employee, even though the reverse of this proposition might be true under the doctrine of *respondeat superior*.

Under the instructions of the court the question of the negligence of Harold Giddings was to be determined in the light of his knowledge of the dangerous characteristics of propane gas from his experience with its use, considering the fact that he was using the gas in proximity to an electric heater in a confined space.

■ The evidence taken most favorably to the defendants, was that Harold had never experienced any gas leakage from a cylinder during his 19 years plumbing experience, and that plumbing custom was to freely use the propane gas torch, even in the presence of open flame. The evidence also was that while Harold had knowledge of the dangerous and explosive qualities of propane gas in general, he possessed no knowledge of what mixture of gas and air produced a combustible mixture, nor what the effect would be in producing a combustible mixture by reason of the closed space in which he was working. In light of this evidence it was a factual determination for the jury on whether Harold's conduct was that of a prudent plumber under the existing circumstances, and not a question of law for the ruling of the court, nor did the court abuse its discretion in denying the plaintiffs' motion to set aside the verdict.

■ The fact that an explosion and fire did take place did not of itself render the defendants liable. They were bound to exercise the care and caution commensurate with the use of an inherently dangerous substance, but they were not insurers. *Lewis* v. *Vermont Gas Corp.*, 121 Vt. 168, 182, 151 A.2d 297.

*Judgment affirmed.*