## State of Vermont v. Douglas C. Mills

[328 A.2d 410]

No. 169-74

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed November 14, 1974

*Patrick J. Leahy,* State's Attorney, and *Paul D. Jarvis,* Deputy State's Attorney, for the State.

*Richard W. Darby, Esq.,* of *Adams & Meaker,* Waterbury, for Defendant.

**Keyser, J.** On May 9 and 10, 1974, Douglas C. Mills was tried for operating a motor vehicle with a blood alcohol content

of .10 or above. At the close of the State's case, the defendant moved for a directed verdict of acquittal on the ground that the State had not proved that the chemical analysis of the breath sample had been performed according to methods approved by the State Department of Health. The court denied the motion. The defendant renewed his motion at the close of all of the evidence. The court reserved its ruling on the motion and instructed the jury that the question of the method of approval was a question of law and not for their consideration. The case was submitted to the jury for decision which returned a verdict of guilty. Subsequently, the court granted defendant's motion for a directed verdict of acquittal. It held as follows:

> Since the method of analyzing the respondent's breath sample has not been shown to be approved by the department of health it cannot be considered valid. The State having thus failed to introduce a prima facie case, the respondent's motion for a directed verdict is granted.

The State was allowed an exception before final judgment and permitted an appeal to this Court under 13 V.S.A. § 7403 which provides that this Court "shall hear and determine the questions upon such exceptions and render final judgment thereon." Although the order of the district court permitting the State to appeal did not include a signed statement of the questions to be presented for review, we find authority to examine the question implied by the exception taken by the State. *In re Dexter,* 93 Vt. 304, 313, 107 A. 134 (1919). Thus, the basic question for our determination is whether the evidence of the State established a *prima facie* case.

The focal point in this appeal is the sentence in 23 V.S.A. § 1203(a) which reads, "Chemical analysis of the person's breath or blood shall be considered valid under the provisions of this section when performed according to methods approved by the state department of health." The defendant contends that in order to approve the methods of chemical analysis, the department of health was required to take action in accordance with the rule-making provisions of the Administrative Procedure Act, 3 V.S.A., Chapter 25. The defendant thus concludes that since the department of health had failed

to approve the methods utilized for analyzing his breath sample pursuant to the procedures required by the Administrative Procedure Act, the chemical analysis cannot be considered valid; hence, the State was unable to introduce a *prima facie* case that the defendant was operating a motor vehicle with a blood alcohol content of .10 or above "as shown by chemical analysis of his breath or blood", in violation of 23 V.S.A. § 1201(a)(1), the statute with which he was charged.

Section 1203(a) purports to assign to the department of health a duty to approve methods of chemical analysis of blood or breath to be considered valid for the determination of the percentage by weight of alcohol in the blood for the purpose of prosecuting violations of 23 V.S.A. § 1201— "Operating vehicle under the influence of intoxicating liquor." However, the judiciary has long had available to it a procedural and evidentiary framework to determine the validity of chemical analysis to establish blood alcohol concentration. R. Donigan, Chemical Tests and the Law, 15–19 (2d ed. 1966). *See also* C. McCormick, Evidence § 209, at 513 (2d ed. E. Cleary 1972); Annot., 77 A.L.R.2d 971 (1961). The controlling question is whether the evidence given, concerning the tests and result, is trustworthy. *State* v. *Magoon*, 128 Vt. 363, 366, 264 A.2d 779 (1970).

> It is not required that the results of accepted chemical testing methods be infallible to be admissible. If the test affords reasonable assistance to the triers of the fact, technical shortages in the manner or method of proof may affect its weight but do not control its admissibility. [*Id.* at 367.]

The State's evidence showed that on March 23, 1974, the defendant was driving his automobile from Vergennes to Burlington. He was stopped in Shelburne Village by state police who had followed defendant for several miles. After dexterity tests were administered to the defendant, he was asked to and gave a sample of his breath for the purpose of determining the alcoholic content of his blood. The officer testified as to the equipment (crimper box) used to collect the breath sample, the manner of taking it, and the procedures he followed which were also demonstrated to the jury by the state

toxicologist. He said the crimper box was an effective means of gathering the sample. The procedure of analyzing defendant's breath samples by means of the Mark II Gas Chromatograph were described. The result of the two samples analyzed when converted to blood alcohol content showed an amount by weight of alcohol in defendant's blood of .121 and .137 per cent.

The evidence showed that the blood-breath concentration ratio used in this state in alcohol breath testing is numerically expressed at 2000:1, which is an established and recognized ratio of concentration of alcohol in blood to the concentration of alcohol in the breath.

The state's toxicologist further testified that the gas chromatograph was an accurate means of examining blood alcohol content and that the result of .121 and .137 reflected the true alcohol content of defendant's blood. Both tests were within the experimental error of the procedure. Medical testimony indicated that on an assumed test of .137, the lowest possible level of blood alcohol content would be .127 and could be higher, and with an assumed analysis of .121, the lowest blood alcohol content would be .11 while defendant was driving his automobile.

The only evidence introduced by the defendant related principally to the accuracy and reliability of taking the defendant's sample and its analysis to establish his blood alcohol content.

Defendant's expert witness, a chemist, testified in cross-examination that the crimper box is an effective means of collecting a sample if properly done. He also was familiar with and had used the Mark II Gas Chromatograph intoximeter for two years in analyzing breath samples for alcohol content and testified that if the procedure is properly followed it is probably one of the best methods available.

The court said in its conclusions of law that "No question is raised that the Mark II Gas Chromatograph intoximeter is not a useful or accurate device to accomplish this purpose."

The State's evidence on the validity of the chemical analysis of the defendant's breath to determine the percentage by weight of alcohol in his blood consisted of the testimony of the state police officer, of the procedures he followed in collecting a sample of the defendant's breath for chemical analy-

sis, complimented by the demonstration by the state toxicologist of those procedures that the officer utilized. The qualifications of the state toxicologist were placed into evidence, and the defense offered no objection to his testimony that the gas chromatograph is an accurate means of examining blood alcohol content. *Cf. Lambert* v. *Fuller*, 131 Vt. 181, 303 A.2d 471 (1973).

The posture of this case thus presented the question whether the gas chromatograph was a valid chemical analysis to determine the percentage by weight of alcohol in the defendant's blood as an issue of fact for the jury to resolve. See *Greenberg* v. *Gidding*, 127 Vt. 242, 247, 246 A.2d 832 (1968); *Valente* v. *Commercial Insurance Co.*, 126 Vt. 455, 461, 236 A.2d 241 (1967). By returning a verdict of guilty, the jury found that the chemical analysis was valid and resolved this issue in favor of the State. See *LaFaso* v. *LaFaso*, 126 Vt. 90, 97, 223 A.2d 814 (1966).

The action of the district court cannot be sustained. The court disregarded the jury's verdict of guilty on the basis that the State had not presented a *prima facie* case since the chemical analysis of the defendant's breath was not valid. The jury had resolved the issue of the validity of the chemical analysis in favor of the State, which is clearly supported by the evidence. The question of whether the department of health had approved the methods of this chemical analysis in conformance with the Administrative Procedure Act was not properly before the district court, because the State had utilized the long-recognized method of establishing the validity of this chemical analysis by the evidentiary route. In this case the State did not rely on the statutory premises of validity of the chemical analysis proclaimed by the Legislature in 23 V.S.A. § 1203(a).

*Directed verdict of acquittal reversed; cause remanded for entry of judgment on the verdict by the jury of guilty and the imposition of sentence.*